Timothy MANNING, Petitioner,

v.

SMITH BARNEY, HARRIS UPHAM & CO. INC., Respondent.

No. 93 Civ. 1335 (LBS).

United States District Court,
S.D. New York.

Aug. 18, 1993.

Francis X. Stone, Boston, MA, for petitioner.

Scott E. Kresch, Smith Barney Legal Dept., New York City, for respondent.

## OPINION

SAND, District Judge.

Currently before the Court is plaintiff's motion for reconsideration of our opinion dated June 9, 1993, familiarity with which is presumed 822 F.Supp. 1081. Plaintiff's motion is granted and upon reconsideration, we adhere to our previous opinion.

Plaintiff contends that this Court made a manifest error of law when we stated, citing *Brawer v. Options Clearing Corp.*, 807 F.2d 297 (2d Cir.1986), *cert. denied*, 484 U.S. 819, 108 S.Ct. 76, 98 L.Ed.2d 39 (1987), that it is settled law in this Circuit that there is no private right of action under § 6 of the Securities and Exchange Act of 1934. Plaintiff is correct insofar as that statement by the Court was overbroad and did not note one possible exception recognized by the Second Circuit; however, the plaintiff in this case does not fall within that exception. Furthermore, despite plaintiff's persistent contention that the controversy at issue arises under the securities laws, his argument remains frivolous and the sanctions therefore continue to be appropriate.

In *Brawer*, the Second Circuit left open the possibility that a member of the investing public might have a private right of action under § 6 against an exchange for the violation of an exchange's internal rules if that investor could allege fraud. The plaintiff in *Brawer* had alleged that the defendant exchange and its clearing house had violated an internal rule which provided for the adjustment of option prices under certain market conditions. The plaintiff however had not alleged any fraud or bad faith in connection with the alleged violation of the rule. The Second Circuit held that while generally there is no private right of action under § 6,

if the plaintiff had alleged fraud, which Brawer had not, there might be such a private remedy. This possible exception to the general rule was noted, but not extended in any way, by Judge Leisure in *Pompano–Windy City Partners v. Bear Stearns & Co.*, 794 F.Supp. 1265 (S.D.N.Y.1992), a case upon which plaintiff relies. We note that a few weeks after our opinion in this case, one district court in this Circuit rejected the exception suggested by *Brawer* and held that there is no private right of action under § 6. *Market Street Limited Partners v. Englander Capital*, 1993 WL 212817 at *12 (S.D.N.Y. 1993) (relying on the reasoning set forth in *Spicer v. Chicago Board Options Exchange*, 977 F.2d 255, 261 (7th Cir.1992)).

The possible exception has two implicit conditions: (1) the plaintiff must be a member of the class of those for whose especial benefit or protection the rule was intended; (2) the pleading of fraud must be in relation to the alleged violation of an exchange rule. Manning's allegations do not satisfy either of these conditions, and he therefore does not have a private right of action under § 6, even if we were inclined to infer that Congress intended such a private right of action.

Section 6(b), which provides that exchanges are required to promulgate rules and regulations designed to prevent fraudulent and manipulative acts and practices on the part of members of the exchange, is clearly meant for the "especial benefit" and protection of the investing public, and not for an employee/registered person of a member of the exchange. Apparently recognizing this, plaintiff has attempted in his latest filings with the Court to characterize himself as an investor. While Mr. Manning may certainly be an investor, it is disingenuous to argue that his stance as plaintiff in this lawsuit is that of an investor. He does not bring this action based on any transactions in the securities market; he brings this action as a former employee of Smith Barney who is dissatisfied with the outcome of an arbitration proceeding arising out of a promissory note obligation incurred in the course of his employment. Section 6 was not intended to benefit plaintiff, and while this consideration is but one factor in determining whether a

private right of action is inferred, we decline to address the other factors when this requirement is so obviously lacking.

As to the second condition, we wish only to point out briefly that plaintiff has not alleged fraud or bad faith with regard to a violation of any specific exchange rule. Rather, plaintiff contends that defendant Smith Barney acted fraudulently and in bad faith *in the arbitration proceeding* and therefore violated some sort of general prohibition against acting fraudulently and in bad faith. Plaintiff has cited no decision under § 6 that credits such an attenuated argument, and upon reconsideration, we find the position as illogical as we did the first time.

■ Plaintiff seeks once again to argue that his action arises under the federal securities laws and that the Court therefore has jurisdiction to proceed. This time around, plaintiff contends that the "nexus" to the federal securities laws lies in the fact that the promissory note, (which is the basis of the action), while not itself a security, was used as an incentive to recruit plaintiff to work for Smith Barney, a securities firm. This cannot be the meaning of the term "arising under"; again, we are prompted to extend plaintiff's reasoning to an apartment lease used as a recruiting incentive, or a new car loan. Would lawsuits stemming from those transactions also arise under the securities laws because Smith Barney is a securities dealer? We think not.

■ Finally, plaintiff's counsel seeks to have the Court lift the sanctions which we imposed in our first opinion, on the ground that plaintiff was seeking, in good faith, an extension of the law. We decline to do so. We continue to believe that plaintiff's argument is totally without merit or basis in the existing law. Plaintiff's counsel's sincerity and justifiable zeal were taken into account fully when the Court limited the amount of the sanctions to $250. Any collateral effects the award of sanctions has on the plaintiff's ability to obtain oral argument on appeal are not of concern to this Court.

■ We deny defendant's request for further sanctions based on the current motion for reargument. While we would have seri-

ously considered granting such sanctions ordinarily, because we did overstate the current position of the Second Circuit with regard to a private right of action under § 6, sanctioning the plaintiff's counsel would be inappropriate.

So Ordered.